IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN CIVIL LIBERTIES UNION, MARK
AMERIKA of ALT-X, ART ON THE NET,
FEMINIST.COM, FULL CIRCLE BOOKS,
OBGYN.NET, SANTA FE ONLINE, SEXUAL
HEALTH INSTITUTE, STOP PRISONER RAPE,
JEFF WALSH of OASIS MAGAZINE,
AMERICAN BOOKSELLERS FOUNDATION
FOR FREE EXPRESSION, ASSOCIATION OF
AMERICAN PUBLISHERS, INC., ELECTRONIC
FRONTIER FOUNDATION, FREEDOM TO
READ FOUNDATION, INC., INTERNATIONAL
PERIODICAL DISTRIBUTORS ASSOCIATION,
NEW MEXICO LIBRARY ASSOCIATION, PEN
AMERICAN CENTER, PERIODICAL AND
BOOK ASSOCIATION OF AMERICA,
PUBLISHERS MARKETING ASSOCIATION,
and RECORDING INDUSTRY ASSOCIATION
OF AMERICA,

        Plaintiffs,

        vs.                                        No. CIV 98-474 LH/DJS

GARY JOHNSON, in his official capacity as
Governor of the State of New Mexico, and TOM
UDALL, in his official capacity as Attorney General
of the State of New Mexico,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss or Abstain (Docket No. 5), filed May 20, 1998, and Defendants' Motion to Dismiss Based on the Eleventh Amendment (Docket No. 21), filed June 5, 1998. The Court, having considered the pleadings

submitted by the parties, the arguments of counsel, and otherwise being fully advised, finds that the motions are not well taken and will be **denied**.

## BACKGROUND

Plaintiffs have filed suit seeking a declaration from this Court that a recently enacted New Mexico criminal statute regulating the content of material on the Internet violates the First, Fifth, and Fourteenth Amendments and the Commerce Clause of the United States Constitution and seeking preliminary and permanent injunctions baring the Defendants from enforcing the statute. The New Mexico Legislature enacted what the parties refer to as the "New Provision" in its 1998 Session which is to be codified at N.M. STAT. ANN. § 30-37-3.2(A). The challenged statute reads, in pertinent part:

> Dissemination of material that is harmful to a minor by computer consists of the use of a computer communications system that allows the input, output, examination or transfer of computer data or computer programs from one computer to another, to knowingly and intentionally initiate or engage in communications with a person under eighteen years of age when such communication in whole or in part depicts actual or simulated nudity, sexual intercourse or any other sexual conduct. Whoever commits dissemination of material that is harmful to a minor by computer is guilty of a misdemeanor.

N.M. STAT. ANN. § 30-37-3.2(A). Plaintiffs are various organizations and individuals who maintain or use computer systems to provide access to a range of information through a variety of media. This information is accessible by residents of the State of New Mexico on the Internet. The Internet, as Plaintiffs allege in their complaint, "is a decentralized, global medium of communication that links people, institutions, corporations and governments around the world. It is a giant computer network that interconnects innumerable smaller groups of linked computer networks and individual computers . . . currently believed [to connect in excess of] 159 countries and over 100 million users." (Compl.¶

33.) Defendants have filed two motions to dismiss arguing that the Eleventh Amendment bars this suit, that the Plaintiffs lack standing, and, alternatively, that this Court should abstain until such time as the courts of New Mexico have had an opportunity to interpret the statutory language in such a manner as to resolve the instant constitutional challenges.  The Court finds, for the reasons discussed below, that the Plaintiffs have standing to bring this suit, that the issues presented are ripe for review, that abstention would not be appropriate, and that the Eleventh Amendment does not bar this suit seeking prospective injunctive relief.

## MOTION TO DISMISS OR ABSTAIN

Defendants argue in their Motion to Dismiss or Abstain that this Court lacks jurisdiction over this suit arguing that the Plaintiffs lack standing and that their complaint fails to set forth a case or controversy as required in Article III of the United States Constitution.  Alternatively, the Defendants argue that this Court should abstain under the *Pullman* doctrine to allow the New Mexico courts to resolve alleged ambiguities in the law which Defendants argue may negate the need to consider the constitutional issues raised by Plaintiffs.

Defendants first argue that despite the Plaintiffs alleged "fear" of prosecution, Plaintiffs currently cannot face actual prosecution under the statute nor do they face even a threat of prosecution, because the New Provision will not become effective until July 1, 1998.  Moreover, the Defendants argue that once the act becomes effective, prosecution will still not be imminent. Defendants assert that under New Mexico law a prosecutor would be required to give notice of his intent to prosecute and the accused would have thirty days to file a civil suit seeking a determination that the challenged acts were not illegal.  *See* N.M. STAT. ANN. § 30-37-4.  Plaintiffs respond that

they have alleged a reasonable fear of prosecution sufficient to establish standing and assert that this pre-enforcement suit is appropriate under the circumstances.

When a facial challenge implicating First Amendment values is brought, the burden to show that a controversy is ripe for review is somewhat relaxed because of the danger that the challenged statute might otherwise result in the chilling of constitutionally protected speech. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499-1500 (10th Cir. 1995). The United States Supreme Court has held that suits challenging the constitutionality of statutes prior to their enforcement are permissible. *Virginia v. American Booksellers Ass'n.*, 484 U.S. 383, 393 (1988). Moreover, "in the First Amendment context litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *American Booksellers Ass'n.*, 484 U.S. at 392-93 (citing *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 956-57 (1984) (internal quotations and other citations omitted)).

The instant Complaint alleges that the Plaintiffs fear prosecution under the New Provision and assert that they will either be forced to risk prosecution if they fail to comply with the requirements of the New Provision or they will have to engage in self-censorship of constitutionally protected material. (Compl. ¶ 96.) Plaintiffs have also averred that due to the nature of the Internet and the inability of providers to identify the age or geographic location of their users, others who are not plaintiffs to this suit "will [also] be forced to self-censor [their] speech on the Internet" or face prosecution. (Compl. ¶ 87.)

The Court recognizes that this suit was filed before the act has become effective, however, the Supreme Court in *American Booksellers Association v. Virginia* was untroubled by the pre-enforcement nature of that suit.  484 U.S. at 392-93.  Although that suit was actually filed after the act became effective, the Supreme Court's ruling appears to apply to challenges to statues that have not yet become effective as well as to suits that are merely filed prior to any enforcement efforts are initiated.[1]   Regardless, the Supreme Court has explicitly approved federal court review of statutes alleged to violate First Amendment rights, even when such suits are filed before the statue becomes effective.  *See American Booksellers Ass'n. v. Hudnut*, 771 F.2d 323, 327 (7th Cir. 1985), *aff'd* 475 U.S. 1001 (1986); *see also Pierce v. Society of Sisters* 268 U.S. 510 (1925) (finding suit seeking to enjoin statute which had an effective date two years in the future was ripe for adjudication).  As in both *American Booksellers* cases, the "danger of [the] statute is in large measure, one of self-censorship; a harm that can be realized without actual prosecution."  *American Booksellers v. Virginia*, 484 U.S. at 393.

The Plaintiffs have clearly alleged an "actual and well founded fear that the law will be enforced against them."  *Id*.  "[T]he State has not disavowed its intention of invoking criminal penalties."  *Gonzales*, 64 F.3d at 1501.  This Court must conclude that the Plaintiffs are "'not without some reason in fearing prosecution,' in spite of the fact that no actual threats of prosecution [have]

---

[1] The Court of Appeals noted that the suit was filed "[a]pproximately two weeks after the effective date of the amendment." *American Booksellers v. Virginia*, 802 F.2d 691, 693 (4th Cir. 1986), *rev'd* 484 U.S. 383 (1988).  However, in making its ruling that the challenge was ripe for review, the Supreme Court noted that the State argued that the suit had "been made before the statue became effective." *American Booksellers v. Virginia*, 484 U.S. at 392.  Thus, it appears that the *American Booksellers* court would have been untroubled by both a pre-enforcement and pre-effective date suit.

been made."[2] *Id*. (citation omitted).  The Court can reach no other conclusion given the recent enactment of the statute.  *See American Booksellers v. Virginia*, 484 U.S. at 393 (noting that the "State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise"). Nothing would be gained by waiting for the act to become effective on July 1, 1998.  *Hudnut*, 771 F.2d 323 (1985).  "Time would take a toll, however, on the speech of the parties subject to the act."  *Id*.  In the complex world of the Internet and its untold millions of gigabytes of information, the Plaintiffs and others covered by the New Mexico statute would be forced to "take special care not to release material that might be deemed" to violate the New Provision.  *Id*. "Deferred adjudication would produce tempered speech [and force whole web sites to shut down] without assisting in resolution of the controversy."  *Id*.

The Court rejects the Defendant's assertion that Governor Johnson is not a properly named Defendant.  As Plaintiffs properly observe, although not charged with the prosecutorial power the New Mexico Constitution grants the Attorney General, the Governor retains significant official authority to influence or promote a decision to prosecute individuals violating the New Provision or other criminal statutes.  *See* N.M. STAT. ANN. § 8-5-2(B) (stating that the attorney general shall "prosecute and defend in any . . . court or tribunal all actions . . . in which the state may be a party or interested . . . when requested to do so by the governor . . .") and N.M. STAT. ANN. § 9-5-3

---

[2] The Defendants' reliance on section 30-37-4 of the New Mexico Statutes is misplaced. While it is not clear that the notice and civil suit provisions of section 30-37-4 would apply to the New Provision, the Tenth Circuit has already determined that they are not an impediment to federal court review of acts covered by that section.  *See American Booksellers Assn*. v. *Schiff*, 868 F.2d 1199, 1200 (1989).  Moreover, in order to implement the procedure, Plaintiffs would be forced to open themselves up to the possibility of criminal liability.  While it is true that Plaintiffs may be able to file a civil action challenging the New Provision under section 30-37-4, if that suit was unsuccessful, the state would be free to pursue prosecution of the Plaintiffs.  Plaintiffs should not be forced to incur criminal liability in order to challenge this statute.

(providing that . . .the attorney general shall, upon direction of the governor, investigate any matter . . . in which the . . . state . . . may be interested [and] the attorney general . . . is hereby authorized to take such action as, in his opinion, conditions warrant"). For all of these reasons, the Court concludes that the Plaintiffs have sufficiently alleged that an actual controversy exists and that they have such a "personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Therefore, the Court finds that the Plaintiffs have standing to bring this action and that the matter is ripe for review.

Finally, the Court concludes that there is no reason to abstain from this action pursuant to the *Pullman* doctrine. "Abstention is appropriate when state courts may clarify the meaning of a statute, thus sharpening the constitutional dispute and perhaps preventing an unnecessary constitutional adjudication." *Hudnut*, 771 F.2d at 327. Counsel's suggestion, at the hearing in this matter on June 22, 1998, that this statute could be interpreted to apply only to one to one communications is pure sophistry. While it is true that the New Provision does outlaw the dissemination of material "that is harmful to *a* minor" if that dissemination is made knowingly and intentionally made to "*a* person under eighteen years of age," it would be absurd to conclude, as Defendants suggest, that the law does not cover communications directed towards two or more minors or a minor and an adult. N.M. STAT. ANN. § 30-37-3.2 (emphasis added). Such a conclusion would make the statue inapplicable to the Internet, the very medium it was intended to apply, as there is almost no form of communication on the Internet that does not potentially involve communication with more than one person.

The Court has carefully considered the application of the *Pullman* doctrine and is unable to see any reason to abstain from considering the constitutional questions presented by this action, particularly with regard to the Commerce Clause arguments raised by the Plaintiffs.  The Court will, however, remain open to the possibility of certifying questions to the New Mexico Supreme Court, should Defendants articulate a question of state law which might end the need to consider questions of constitutional dimension.  For the foregoing reasons, the Court will deny the motion to dismiss or abstain.

### MOTION TO DISMISS BASED ON ELEVENTH AMENDMENT

The Defendants have also moved to dismiss this action on the grounds that the Plaintiffs' suit does not fit within the *Ex parte Young* exception to the Eleventh Amendment's general jurisdictional bar to federal courts entertaining suits against a state.  Essentially, the Defendants argue that the Court lacks jurisdiction over the suit asserting again that there is no threatened enforcement of the New Provision and that there cannot be any threatened enforcement until the act becomes effective on July 1, 1998.  As the Court has previously concluded, Plaintiffs have alleged a reasonable fear of actual prosecution and there is no reason to delay this adjudication.  The Court finds that the Eleventh Amendment does not bar this suit as it seeks prospective injunctive relief against state officials.  *See Edelman v. Jordan*, 415 U.S. 651, 664 (1974). If the Eleventh Amendment acted as a bar to this type of suit, many of the cases cited herein would have been dismissed.  *See e.g. New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495 (suit against the New Mexico Secretary of State and Attorney General to enjoin enforcement of state campaign finance legislation); *American Booksellers Assoc. v. Schiff*, 868 F.2d 1199 (suit against New Mexico district attorneys seeking to enjoin enforcement

of law regulating the display of material deemed harmful to minors).  The Court will deny the Motion to Dismiss Based on the Eleventh Amendment.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss or Abstain (Docket No. 5), filed May 20, 1998, is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Based on the Eleventh Amendment (Docket No. 21), filed June 5, 1998, is **denied**.

_/s/ LeRoy Hansen_
**UNITED STATES DISTRICT JUDGE**