IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AMERICAN CIVIL LIBERTIES UNION, MARK
AMERIKA of ALT-X, ART ON THE NET,
FEMINIST.COM, FULL CIRCLE BOOKS,
OBGYN.NET, SANTA FE ONLINE, SEXUAL
HEALTH INSTITUTE, STOP PRISONER RAPE,
JEFF WALSH of OASIS MAGAZINE,
AMERICAN BOOKSELLERS FOUNDATION
FOR FREE EXPRESSION, ASSOCIATION OF
AMERICAN PUBLISHERS, INC., ELECTRONIC
FRONTIER FOUNDATION, FREEDOM TO
READ FOUNDATION, INC., INTERNATIONAL
PERIODICAL DISTRIBUTORS ASSOCIATION,
NEW MEXICO LIBRARY ASSOCIATION, PEN
AMERICAN CENTER, PERIODICAL AND
BOOK ASSOCIATION OF AMERICA,
PUBLISHERS MARKETING ASSOCIATION,
and RECORDING INDUSTRY ASSOCIATION
OF AMERICA,

   Plaintiffs,

 vs.                 No. CIV 98-474 LH/DJS

GARY JOHNSON, in his official capacity as
Governor of the State of New Mexico, and TOM
UDALL, in his official capacity as Attorney General
of the State of New Mexico,

   Defendants.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

   **THIS MATTER** comes before the Court on Plaintiffs' Motion for a Preliminary Injunction (Docket No. 10), filed May 28, 1998. The Court, having considered live testimony from five witnesses, including one expert, testimonial affidavits and declarations, exhibits, the Joint Stipulation

on [sic] Facts, and the arguments of counsel at the hearing held in this matter on June 22 and 23, 1998, finds that the motion is well taken and should be **granted** and makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Internet is a decentralized, global medium of communication that links people, institutions, corporations and governments around the world. It is a giant computer network that interconnects innumerable smaller groups of linked computer networks and individual computers. While estimates are difficult due to its constant and rapid growth, the Internet is currently believed to connect more than 159 countries and over 109 million users. (Joint Stipulation ¶ 2.) The Court incorporates by reference the Joint Stipulation on [sic] Facts (Docket No. 29), filed June 16, 1998, as findings of this Court on the scope and character of the Internet.

2. Plaintiffs represent a broad range of individuals and entities who are speakers, content providers, access providers and ordinary users on the Internet. Plaintiffs post, read and discuss content including resources on obstetrics, gynecology, and sexual health; visual art and poetry; literature about sexual abuse and feminist issues; the problem of prisoner rape; and resources for gay and lesbian youth.

3. Plaintiffs are speakers and readers who use electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, Web-based discussion groups, and the World Wide Web.

4. All of the Plaintiffs communicate speech over the Internet which they reasonably believe could be prosecuted under the challenged statute, Section 1(A), 1998 New Mexico Laws, Chapter 64, to be codified as Section 30-37-3.2(A) of the New Mexico Statutes Annotated

(hereinafter the "New Provision").

5. All of the Plaintiffs communicate speech that they believe has value for adults and for at least older minors.

6. Virtually all speech on the Internet that is available to adults is also available to minors.

7. It is impossible for speakers using electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, and Web-based discussion groups to verify the age of person(s) who receive their speech.

8. There are no good faith, reasonable, effective and appropriate actions available to restrict or prevent access by minors to communications by speakers using electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, and Web-based discussion groups.

9. Speakers using electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, and Web-based discussion groups have no way to require a credit card, debit account, adult access codes, or adult personal identification numbers before providing access to their speech.

10. The vast majority of speakers on the World Wide Web have no practical way to require a verified credit card, debit account, adult access code, or adult personal identification number before providing access to their speech.

11. It is impossible for speakers on the World Wide Web who are not engaging in financial transactions to require a verified credit card, debit account, adult access codes, adult personal identification numbers before providing access to their speech.

12. It is impossible for speakers on the World Wide Web who lack access to Common Gateway Interface (CGI) technology, including all of the Web authors on America Online, to require a credit card, debit account, adult access code, or adult personal identification number before

providing access to their speech.

13. The use of Common Gateway Interface (CGI) technology by Web authors requires additional system overhead, maintenance, and expertise that is not available to many speakers on the World Wide Web.

14. It is economically infeasible for the vast majority of speakers on the Internet to review all of their content to determine whether it is covered by the New Provision.

15. Mandatory age verification would cause many speakers to shut down their sites on the World Wide Web because such verification and review would be prohibitively expensive and/or impractical.

16. There are no good faith, reasonable, effective and appropriate actions available to the vast majority of speakers on the World Wide Web to restrict or prevent access by minors to their communications.

17. Requiring a credit card, debit account, adult access code, or adult personal identification number before providing access to speech on the Internet would bar many adults who lack such identification from access to information appropriate for them.

18. Requiring age verification before providing access to speech on the Internet would bar many people from accessing important information—such as gynecological information—anonymously.

19. Speakers on the Internet using electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, Web-based discussion groups, and the World Wide Web lack any mechanism for labeling or segregating specific communications in a way that would enable those communications to be automatically blocked from reaching minors.

20. To the vast majority of the speakers on the Internet, the defenses provided in the New Provision are practically unavailable.

21. Electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, Web-based discussion groups, and the World Wide Web are available to Internet users worldwide.

22. Electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, Web-based discussion groups, and the World Wide Web allow their users to communicate with each other worldwide for no additional cost.

23. The Internet is an instrument of interstate commerce.

24. It is impossible for speakers using electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, Web-based discussion groups, and the World Wide Web to determine the geographic location of persons who access their speech.

25. An electronic message sent from a computer in a state outside the State of New Mexico to another computer outside the State of New Mexico could travel through the State of New Mexico and become accessible to persons in the State of New Mexico.

26. An electronic message sent from a computer in the State of New Mexico to another computer in the State of New Mexico could travel outside the State of New Mexico before reaching its intended recipient.

27. Regardless of their geographic location, speakers have no way to prevent speech communicated by electronic mail, mail exploders, Internet Relay Chat, USENET newsgroups, Web-based discussion groups, and the World Wide Web from reaching persons residing in the State of New Mexico.

28. The New Provision does nothing to prevent material involving "nudity" or "sexual conduct"

that is posted overseas from being available to minors in the United States.

29. Commercial online services such as America Online provide parents with a wide range of mechanisms that parents can use to prevent their children from accessing material online they do not want their children to view.

## CONCLUSIONS OF LAW

1. The Court concludes that Plaintiffs are likely to succeed on their claims that:

    a. The New Provision, on its face and as applied to Plaintiffs, violates the First, Fifth, and Fourteenth Amendments, and the Commerce Clause of the United States Constitution. *See generally Reno v. American Civil Liberties Union*, 117 S.Ct. 2329 (1997); *American Libraries Ass'n v. Pataki*, 969 F.Supp. 160 (1997).

    b. The New Provision violates the First and Fourteenth Amendments of the United States Constitution because it effectively bans speech that is constitutionally protected for adults. *See Reno*, 117 S.Ct. at 2346 (holding that the federal Communications Decency Act "effectively suppresses a large amount of speech that adults have a constitutional right to receive" in order to deny minors access to potentially harmful speech).

    c. Defendants have failed to satisfy their burden to demonstrate that the New Provision will directly and materially advance a compelling governmental interest. *See e.g. Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 129-31 (1989).

    d. Defendants have failed to demonstrate that the New Provision constitutes the least restrictive means of serving its stated interest. *Id.*; *Reno*, 117 S.Ct. at 2346-47.

    e. The New Provision violates the First and Fourteenth Amendments of the United

      States Constitution because it interferes with the rights of minors to access and view material that to them is protected by the First Amendment. *American Booksellers Ass'n v. Webb*, 919 F.2d 1493, 1504-05 (11th Cir. 1990) (holding that "'if a work is found to have serious literary, artistic, political or scientific value for a legitimate minority of normal, older adolescents, then it cannot be said to lack such value for the entire class of juveniles taken as a whole.'") (quoting *American Booksellers Ass'n v. Virginia*, 882 F.2d 125, 127 (4th Cir. 1989) (other citations omitted)).

f.    The New Provision violates the First and Fourteenth Amendments of the United States Constitution because it is substantially over-broad. *See Reno*, 117 S.Ct. at 2347-48; *Webb*, 919 F.2d at 1504-05.

g.    The New Provision violates the First and Fourteenth Amendments of the United States Constitution because it prevents people from communicating and accessing information anonymously. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (Holding that "[u]nder our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority."); *Talley v. California*, 362 U.S. 60, 65 (1960) (holding anonymity protected under the First Amendment because forced "identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance").

h.    Defendants have failed to meet their burden to show that the defenses in the New Provision are available to online speakers. *See generally Reno*, 117 S.Ct. 2329; *Pataki*, 969 F.Supp. 160.

    i.       The New Provision violates the Commerce Clause of the United States Constitution because it regulates conduct occurring wholly outside the State of New Mexico. *See generally Healy v. Beer Institute, Inc.*, 491 U.S. 324 (1989); *Pataki*, 969 F.Supp. at 171 (concluding that purely intrastate communications over the Internet do not exist).

    j.       The New Provision violates the Commerce Clause of the United States Constitution because it constitutes an unreasonable and undue burden on interstate and foreign commerce. *See e.g. Pataki*, 969 F.Supp. at 177-80 (noting nature of the Internet makes the burdens on interstate and foreign commerce unreasonable in light of the limited benefits conferred locally).

    k.       The New Provision violates the Commerce Clause of the United States Constitution because it subjects interstate use of the Internet to inconsistent state regulations. *See e.g. Southern Pac. Co. v. Arizona*, 325 U.S. 761, 767 (1945) (finding Arizona statute regulating length of trains violated Commerce Clause as it substantially impeded the free flow of commerce between the states).

    l.       The New Provision cannot be saved by a narrowing construction.

2.    The New Provision uses various terms to define the category of speech that is prohibited, including "harmful to a minor," "nudity, sexual intercourse, or any other sexual conduct," and "indecency." It is unnecessary to decide at this stage of the litigation whether any of the definitions found in section 30-37-1 of the New Mexico Statutes Annotated apply to the New Provision because, even if they did, the potential constitutional defects in the New Provision would remain.

3.    Plaintiffs have made a sufficient showing that they will suffer irreparable injury—at a

minimum the curtailment of their constitutionally protected speech—if the preliminary injunction is not granted. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)).

4. The Court concludes that the threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause Defendants' inability to enforce what appears to be an unconstitutional statute.

5. Finally, the Court finds that the preliminary injunction will not be adverse to the public interest as it will protect the free expression of the millions of Internet users both within and outside of the State of New Mexico.

Having reached these findings of fact and conclusions of law, the Court concludes that the Plaintiffs have met their burden for a motion for a preliminary injunction. *See Autoskill, Inc. v. Nat'l Educ. Support Systems*, 994 F.2d 1476, 1487 (10th Cir. 1993) ("A district judge may grant a preliminary injunction if the moving party demonstrates: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.") Therefore, the Court finds that the Plaintiffs' Motion for a Preliminary Injunction is well taken and should be granted. The Court enters an order contemporaneously with these Findings of Fact and Conclusions of Law granting the Plaintiffs' motion and preliminarily enjoining the Defendants—and those persons in active concert or

participation with Defendants, who receive actual notice of the order—from enforcing the New Provision. *See* FED. R. CIV. P. 65(d).

```
                          _____
                               UNITED STATES DISTRICT JUDGE
```